## Veron's Administrator et al. v. Veron.

(Decided February 15, 1929.)

W. S. HEIDENBERG for appellants.

PEAK & PEAK for appellee.

OPINION OF THE COURT BY COMMISSIONER TINSLEY—Affirming.

Frank Veron, sometimes called Doc Veron, employed as a locomotive fireman by the Louisville & Nashville Railroad Company, lost his life while in the discharge of his duties. His mother, the appellant, qualified as his administratrix. A settlement was made under the terms of the Federal Employers' Liability Act (45 USCA, secs. 51-59), by which the railroad company paid to the administratrix $6,500, of which sum one-third, or $2,166.66, was paid to his attorney for his services. Frank Veron left an estate consisting of personalty amounting to $1,558, from which was paid his funeral expenses and cost of administration, amounting to $54.50, leaving a net estate of $1,003.50.

This action was instituted by the appellee to recover one-half of that sum and, in addition, such portion of the net proceeds of the settlement made with the railroad company "as may be due him under the Federal Employers' Liability Act as the father of Frank Veron, deceased."

By her answer appellant denied that appellee was the father of Frank Veron, and by its second paragraph, and as a further defense, set up certain acts and conduct upon the part of appellee, to-wit: That he had abandoned her on three different occasions while they were living together as husband and wife; that they were divorced after the last abandonment; that he was a drunkard; that after the divorce he contributed nothing to the support of Frank; that he rarely visited Frank or was visited by him; and that there was little or no communication between them up to Frank's death. This affirmative matter was traversed by reply.

Appellant and appellee were married in the state of Indiana, December 9, 1891. Appellee abandoned appellant the latter part of January or early in February, 1893; they were reconciled and resumed their marital relations the last of February, 1894. The proof further shows that between these dates appellee visited appellant a number of times at her father's home, where she was living; that Frank was born September 18, 1894; that a divorce a vinculo was granted appellant in the Floyd circuit court of Indiana, December 22, 1904, and that appellant married her present husband in 1908; that during the interval between her divorce and second marriage appellant supported Frank and an elder son, of whom appellee is admitted to be the father, without any material assistance from appellee, and after her second marriage both boys continued to live with her except during the time they served overseas during the war, and until Frank's death; and that the eldest son still lives with the mother. The appellant is now and has been all the years past a resident of Indiana.

To sustain her charge that appellee was not the father of Frank Veron, appellant herself testified that Louis Veron, now dead, was Frank's father, but, on cross-examination, admitted that intimate relations between herself and Louis Veron occurred only one time and that was in June or July, 1891. This was, of course, three or four months after she and appellee had resumed their marital relations. Her son Clarence Veron testified that when he was six or seven years of age he heard appellee say, on two occasions, that he was not Frank's father, and her sister-in-law, Ella Veron, testified that appellee told her Frank did not belong to him, and it was shown by two or three others that appellee had stated to them he was not Frank's father. Opposed to this testimony

is the record in the divorce action, copy of which is filed with the evidence herein. In the petition therein appellant alleged: "That plaintiff and defendant have, as the fruit of their marriage, two children, namely, Clarence Veron, a boy eight years of age, and Doc Veron, a boy six years of age." It is shown that, between their separation in January or February, 1893, and reconciliation in February, 1894, appellee visited appellant frequently, and appellant's testimony contains no assertion that there was no intercourse between herself and appellee during the period preceding their reconciliation. From this fact alone her testimony is incompetent. The rule is thus stated in 7 C. J. 944: "The declarations or admissions of husband or wife concerning children born in wedlock are inadmissible to prove the illegitimacy of such children. . . . " And, in upholding this principle, in Sergent v. North Cumberland Mfg. Co., 112 Ky. 888, 66 S. W. 1036, 23 Ky. Law Rep. 2226, we said: "As a general rule, a child born in lawful wedlock, when its mother is living with her husband, and they have opportunity for coition, is conclusively presumed to be legitimate." To the same effect are the cases of Goss v. Froman, 89 Ky. 318, 12 S. W. 387, 11 Ky. Law Rep. 631, 8 L. R. A. 102, and Wilson v. Wilson, 174 Ky. 771, 193 S. W. 7.

It is only where there is testimony showing nonaccess of the father and mother, or no opportunity for access, that such declarations are admitted. Wilson v. Wilson, supra; Goss v. Froman, supra. And for the same reasons the declarations concerning Frank's paternity, attributed to appellee, cannot be considered, even if he made them, which he denied. The law presumes the legitimacy of Frank Veron, and this court will bastardize no child except upon clear, convincing, and competent evidence, and inexorable demand of the law. It follows, therefore, that appellee must be held to be the father of Frank Veron and entitled to one-half the surplus estate left by him at the time of his death.

2. But whether he is entitled to share in the amount paid by the railroad company, even though he was the father of Frank, presents a different and more difficult question. Frank Veron lost his life while in the service of the railroad company engaged in interstate commerce. In his petition appellee sought to recover such portion of the sum paid by the railroad company "as may be due him under the Federal Employers' Liability Act," an act of Congress approved April 22, 1908, entitled "An Act

relating to the liability of common carriers by railroads to their employees in certain cases," and the right of recovery thereunder is limited to and shall be "for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee." In construing the act, Mr. Justice Lurton, in the case of Michigan Central Railroad Co. v. Vreeland, 227 U. S. 59, 33 S. Ct. 192, 57 L. Ed. 417, quoting from Seward v. Vera Cruz, 10 App. Cas. 59, said: "A totally new action is given against the person who would have been responsible to the deceased if the deceased had lived; an action which . . . is new in its species, new in its quality, new in its principle, in every way new, and which can only be brought if there is any person answering the description of the widow, parent, or child who under such circumstances suffers pecuniary loss."

It is apparent, therefore, that the right of recovery under the act in question is not the right to recover for the benefit of the estate of the decedent, but is a right of action, based upon the principle solely of compensating those persons dependent upon the decedent who suffered a pecuniary loss because of his death. I. C. R. R. Co. v. Doherty's Administrator, 153 Ky. 363, 155 S. W. 1119, 47 L. R. A. (N. S.) 31. And to enable the surviving widow or husband and children, or the parents of the employe, to recover under the act, they, or either, or any of them, must show some ground of reasonable expectation of pecuniary benefit of which such claimant was deprived by the employee's death. In Gulf, C. & S. F. Ry. Co. v. McGinnis, 228 U. S. 173, 33 S. Ct. 426, 57 L. Ed. 785, the court said:

"It is assigned as error that the court misconstrued the character of the liability imposed by the act under which the suit was brought by a ruling that there might be a judgment for the benefit of one of the surviving children, although there was neither allegation nor evidence that that surviving child was either dependent upon or had any reasonable ground for expecting any pecuniary benefit from a continuance of the decedent's life.

"The decedent left a widow and four children, and the suit was brought by widow as administratrix for the benefit of herself and the four children

named in the petition. One of the surviving children was Mrs. Nellie Saunders, a married woman, residing with and maintained by her husband. There was neither allegation nor evidence that Mrs. Saunders was in any way dependent upon the decedent, nor that she had any reasonable expectation of any pecuniary benefit as a result of a continuation of his life. The court was requested to instruct the jury that it could not find any damage in favor of Mrs. Saunders, but this it declined to do.

"The jury was instructed if they found for the plaintiff to return a verdict for such sum as would justly compensate the persons for whose benefit the suit was brought for such pecuniary benefits as they might believe from the evidence the beneficiaries had a reasonable expectation of receiving from the decedent, if his death had not been so occasioned. They were further told to find a round sum in favor of the plaintiff, and then apportion that sum among all the persons for whom the suit had been brought, stating in their verdict, 'how much, if anything, you find for each of said persons.' The jury returned a verdict for $15,000 and apportioned it, one-half to the widow, and the remainder equally among the four children, including Mrs. Saunders.

"The Court of Civil Appeals (147 S. W. 1188) upheld this ruling, saying that 'the federal statute expressly authorizes the suit to be brought by the personal representative for the benefit of the surviving wife and children of the deceased, irrespective of whether they were dependent upon him, or had the right to expect any pecuniary assistance from him.' This construction of the character of the statutory liability imposed by the act of Congress was erroneous. In a series of cases lately decided by this court, the act in this aspect had been construed as intended only to compensate the surviving relatives of such a deceased employe for the actual pecuniary loss resulting to the particular person or persons for whose benefit an action is given. The recovery must therefore be limited to compensating those relatives for whose benefit the administrator sues as are shown to have sustained some pecuniary loss. Michigan Central Railroad v. Vreeland, 227 U. S. 59 (33 S. Ct. 192, 57 L. Ed. 417) ; American Railroad v. Didricksen, 227 U. S. 145, (33 S. Ct. 224, 57

L. Ed. 456). In the last-cited case, speaking of the Employers' Liability Act, we said (p. 149):

" 'The cause of action which was created in behalf of the injured employe did not survive his death, nor pass to his representatives. But the act, in case of the death of such an employe from his injury, creates a new and distinct right of action for the benefit of the dependent relatives named in the statute. The damages recoverable are limited to such loss as results to them because they have been deprived of a reasonable expectation of pecuniary benefits by the wrongful death of the injured employe. The damage is limited strictly to the financial loss thus sustained.' "

Coming now to the "dependency" of appellee upon his son Frank, and the "pecuniary loss" sustained by him by reason of Frank's death, the evidence in this case shows beyond question that, at the time of the death of Frank, appellee was not dependent upon him for support to any extent. While he was then, and had been for years, living in abject poverty, Frank had never contributed anything whatever to his support, and, according to one or two witnesses, had said he never intended to help his father and wanted him to have no part of his money or property. There is no testimony in this case that Frank Veron ever entertained any doubt that the appelle was his father; no intimation that his mother or his brother, Clarence, or any witness who speaks upon the subject, ever made such a suggestion to him; and, so far as we know, he died in the belief that the same man was the father of his brother, Clarence, and himself. And while it is apparent there was total absence of affection between them, it is not unreasonable to believe, and is not too far-fetched upon which to base a conclusion to support our finding of appellee's dependency and pecuniary loss, to suppose that, had Frank lived, his father's continued pitiable condition would have fanned into life some remaining spark of filial feeling as would have appealed to his better nature and induced him· to contribute to his father's support in his declining years. We think these reasons, and the reasoning of the court in the case of McGarvey's Guardian v. McGarvey, Admr., 163 Ky. 242, 173 S. W. 765, requires it to be said that appellee had, just prior to Frank Veron's death, "some ground of reasonable expectation of pecu-

niary benefits of which he was deprived'' by his son's death, and he is therefore entitled to share in the net proceeds of the recovery.

We are not unmindful of the fact that this claim of dependency and pecuniary loss upon the part of appellee and our reasons in sustaining it are rather slender. At the same time the claim of appellant as to such dependency and loss is equally so. There was no allegation of her dependency in her answer, which, it is held in the McGinnis case, supra, and in the case of L. & N R. R. Co. v. Thomas' Admr., 170 Ky. 145, 185 S. W. 840, is a necessary allegation in order to sustain recovery. Because of this omission, she was permitted by the chancellor, after the cause had been submitted and had announced his findings, to amend her answer and make such an allegation.

It is also shown by this record that appellant now has a husband who earns at least $500 per year; they own their home; she collected $5,000 insurance on the life of her son as beneficiary under the policy; and her eldest son contributes to her support. It may be doubted that, if an action to recover for the death of Frank had been instituted, under a showing of these facts, a recovery could have been had. However, as the railroad company recognized a liability, we have now to deal only with the conditions growing out of the settlement thus made, and apportion the funds as between the parties.

It is the rule, as announced in the McGinnis case, supra, that apportionment of the recovery amongst those suffering a pecuniary loss must be made by the jury. In this case the recovery arises from a compromise settlement out of court. We have been able to find but one case where a situation similar to this has been dealt with; that is McGarvey's Guardian v. McGarvey's Admr., supra. In that case the administrator recovered $5,000 from the railroad company in settlement of a death claim under the Federal Employers' Liability Act. The decedent left surviving him a widow to whom he had been married but three weeks before his death. He had been previously married, but his first wife had obtained a divorce and had been awarded the custody of their only child, who was 16 years of age at the time of his father's death. The decedent had made no contribution to the support of this child since the divorce was granted; none being required by the decree. The guardian of the infant

brought action to recover one-half the amount received from the railroad company. The trial court dismissed his petition and that judgment was reversed by this court. It appeared that the son had no independent means, but was maintaining and educating himself by his own endeavors. It was held by this court that the legal obligation resting upon the father to provide for the maintenance of his minor child gave the son ''some ground of reasonable expectation of pecuniary benefits of which he was deprived by the wrongful killing of his father,'' and it was accordingly held that he was entitled to participate in the recovery. In apportioning the recovery between the widow and his son, we held that, since the pecuniary loss of the son would terminate at his majority, he had an expectancy of support from his father only for four and a fraction years; that the expectancy of life of the widow being longer than that of the decedent, her expectancy of support was limited to decedent's expectancy of life at the time of his death which was 27 years. We therefore divided the recovery between the widow and the son upon this basis—giving the widow 86.32 per cent, and the son 13.68 per cent. of the recovery.

Coming now to apportionment as between appellant and appellee, if we should adopt the principles applied in the McGarvey case, supra, we find appellant would be entitled to approximately 56 per cent. and appellee approximately 44 per cent., based upon appellant's age, 54 years, with an expectancy of 18.92 years; appellee's age, 61 years, with an expectancy of 14.86 years; and decedent's age, 32 years, with an expectancy of 29.43 years. Appellee insists such is the proportion each is entitled to and that it should be determined as was done in the McGarvey case, according to a comparison of appellant's expectancy of life with that of appellee. Such an apportionment was not made by the lower court and for that reason appellee has taken a cross-appeal from that part of the judgment fixing the proportions at two-thirds to appellant and one-third to appellee.

The chancellor declined to apply the principles of apportionment in the McGarvey case to this case, upon consideration of the affection and sympathy shown to have existed between appellant and her son, and the assurance naturally following, that, in case of pecuniary difficulties, there would have been strong inclination on the part of the son to aid his mother, which would have been lacking in the case of the father, and which, according to the

chancellor, increased the pecuniary loss which the mother suffered by reason of her son's death. In this we concur. The McGarvey case does not purport to lay down any fixed rule or to establish a principle of apportionment for all cases. The fixed rule is that the apportionment must be made by the jury, measuring to each party his or her proportion in accordance with his or her individual pecuniary loss. Gulf, C. & S. F. Ry. Co. v. McGinnis.

In the McGarvey case, we said: "If we were making this finding as an original proposition—that is, as a jury —the result reached might be different; but here the amount of recovery is already ascertained and fixed, and the only question involved is the proper division of the fund in an equitable way." The chancellor's apportionment in this case is in full accord with the equity of it and in accordance with our conception of right as between the parties.

The judgment is affirmed, both on the original and cross appeals.