**GROSS v. GROSS.**

Court of Appeals of Kentucky.
June 5, 1953.

Rehearing Denied Oct. 9, 1953.

Elmer Drake, Lexington, for appellant.

Weldon Shouse, Lexington, for appellee.

DUNCAN, Justice.

Appellee instituted this action nineteen days after her marriage to appellant, seeking a divorce upon the ground of such cruel beating or injury as indicates an outrageous temper in the husband. KRS 403.020(3) (c). She alleged that she was pregnant at the time of the filing of the petition and sought lump sum alimony in the amount of $20,000. The appellant, by his counterclaim, sought a divorce on the ground of appellee's pregnancy by another man at the time of marriage. The judgment granted the divorce to appellee, awarded her custody of the child born on December 18, 1950, allowed alimony in the sum of $1,500, payable in fifteen monthly installments of $100 each, and directed appellant to pay $12.50 weekly for the support of the child. Appellant and appellee are both dissatisfied with the judgment and have prosecuted an appeal and cross-appeal, respectively. .

Each of the parties had been married and divorced previous to the present marriage. The first marriage of appellant, who is twenty-three years of age, was dissolved by a judgment of divorce on July 15, 1949. Appellee, now twenty-two years of age, was married in 1945 and was divorced from her first husband in 1946.

The courtship of the parties commenced in February, 1950, and culminated in marriage on May 25, 1950. Appellee admits that she was pregnant at the time of the marriage but insists that her pregnancy was the result of premarital intercourse with the appellant during the first week of April, 1950. She testified that she learned of her pregnancy about the first of May, after a physical examination by her physician. She claims that she immediately advised appellant of her condition, and after first suggesting an abortion, which appellee declined, appellant agreed to the marriage.

After the marriage, the parties spent the first night in Bowling Green, where appellant's sister was attending school. Accompanied by the sister, they left Bowling Green the following day, spending the next two nights at Kentucky Lake and Paducah. On the third day, they arrived at Chicago for a visit with appellee's aunt, and it was there that the first trouble occurred. While at a night club, appellee informed her aunt that she was pregnant, and some comment was made concerning that fact in appellant's presence. He immediately became incensed and struck appellee several times. He left Chicago by train with his sister the same night, leaving his automobile at the home of appellee's aunt.

The following day, appellee returned to Kentucky, driving appellant's car. A reconciliation was effected, and the parties resumed their marital relations and lived together in an apartment in Lexington, Kentucky, for some two weeks. During that time, at least two violent disagreements occurred, and appellee instituted this action on June 13, 1950.

Appellant vigorously denies that he had intercourse with appellee before the marriage. He denies any knowledge of her pregnancy until the subject was discussed in Chicago. He admits striking and beating appellee at that time, but ascribes his conduct to his shock and anger at his sudden disillusionment. He explains the reconciliation by the statement that his wife informed him after her return to Kentucky that she was not pregnant and had been merely joking about the matter in Chicago. He asserts that he is not the father of the child and insists that the court erred in awarding alimony and maintenance for its support.

On the question of the paternity of this child, we are faced with the conflicting testimony of the only parties in a position to know the facts. Under such circumstances, we resort to the presumption of legitimacy. At early common law, the presumption was conclusive except in instances where there was no possibility of access of the husband to the wife within the period of gestation. One early writer, in explaining the basis of the rule, stated that "the wickedness of mankind makes it necessary to suppose them better than they really are." The presumption was carried to such ridiculous lengths under the early common

law in England that if a wife had issue while her husband was within the four seas, that is, within the jurisdiction of the King of England, such issue was conclusively presumed to be legitimate. The rule has generally been relaxed in this country, either by statute or judicial construction, and the weight of authority, including Kentucky, since the opinion in Wilson v. Wilson, 174 Ky. 771, 193 S.W. 7, now supports the view that the presumption of legitimacy may be rebutted. However, all authorities agree that even under the modified rule the presumption remains one of the strongest rebuttable presumptions known to the law, and it can only be overcome by evidence so clear, distinct, and convincing as to remove the question from the realm of reasonable doubt. In the case of Moore v. Moore, 301 Ky. 14, 190 S.W.2d 689, 690, it was said:

"But the general rules of evidence do not apply in a case of this kind. As said in the recent case of Ratliff v. Ratliff, 298 Ky. 715, 183 S.W.2d 949, the rule is that, where there is opportunity for access, it will be presumed that a child born in wedlock is legitimate, and the presumption is so great it cannot be overcome except by evidence of the strongest character and so convincing as to remove the question of a reasonable doubt of its legitimacy."

Appellant insists that the presumption should not be indulged in case of an admittedly antenuptial conception. While there is some authority that the presumption is weakened in instances of antenuptial conception, most jurisdictions agree that there is a strong presumption of legitimacy, regardless of whether conception preceded or followed the marriage. In 10 C.J.S., Bastards, § 3, page 22, it is said:

"Even where the birth occurs so soon after marriage as to render it certain that it is the result of antenuptial conception, the presumption obtains that a child born in wedlock is

the child of the husband, and that such child is legitimate. According to some cases, even in the case of antenuptial conception, the presumption that a child born after the marriage is the legitimate child of the husband is a strong one, one of the strongest known to the law, and the fact that there was antenuptial conception does not weaken the presumption of legitimacy arising from birth in wedlock."

In view of the presumption, we have no hesitancy in concluding that the Chancellor was correct in adjudging appellant to be the father of the child and responsible for its support.

In considering the sufficiency of the alimony and maintenance on appellee's cross-appeal, we have no satisfactory evidence of appellant's earnings. His testimony indicates that he is presently employed at a coal mine owned by his father, but due to the fact that the mine is not being operated on a paying basis he is not receiving a regular salary and is only withdrawing his actual living expenses. He also has a drawing account from the Boyle Wholesale Liquor Company, which nets him from $50 to $90 a month. He has no property other than his automobile and is indebted to the Citizens Bank and Trust Company of Lexington in the amount of $600 and to the Bank of Harlan, Harlan, Kentucky, for $600. The appellee is employed as a saleslady in a retail shop and is earning $30 per week. She is living with her mother, who keeps the child while she is working.

Although the award is modest, we are not prepared to say that the Chancellor abused his discretion in the amounts which were fixed. The matter of support is subject to the future control of the court and may be increased or decreased as conditions require. Under the circumstances, we are not disposed to disturb the finding of the Chancellor.

The judgment is affirmed on the original appeal and cross-appeal.