ROBERTSON, Justice,
for the Court:
I.
This case makes its second appearance before this Court. Today’s appellant asks that we consider whether the Circuit Court observed faithfully limitations upon damages recoverable by the survivors of a railroad worker suing under the Federal Employers Liability Act (FELA). We answer in the affirmative.
II.
A.
Nathaniel Gibbs was born June 12, 1952, one of eight children of Albert and Willie Mae Gibbs. In July of 1974, Nathaniel became employed by the Illinois Central Gulf Railroad Company (ICG) and for the next five years worked as a common laborer. On July 18, 1979, as a result of the neglect and carelessness of other ICG employees, Nathaniel was caught between two railroad cars and was killed instantly. All of this happened in ICG’s Vicksburg, Mississippi, yard.
Immediately prior to his death, Nathaniel Gibbs was twenty-seven years of age and a bachelor. He lived with his mother and father at 2901 East Main Street in *946 Vicksburg. Also residing in that home were Nathaniel’s grandmother, Georgia Miles, age eighty-one, and his younger brother, Alfred, then age seventeen, and his younger sister, Malinda, then age fifteen. On the date of Nathaniel’s death, his father, Albert Gibbs, was a retired former employee of the Anderson Tully Company. Albert Gibbs died some three years and eight plus months thereafter — on March 27, 1983, to be exact. Nathaniel’s mother, Willie Mae Gibbs, was at the time employed by the Merchants National Bank in Vicksburg. At the time of Nathaniel’s death, his mother had a life expectancy of 24.2 additional years.
B.
On June 15, 1981, Willie Mae Gibbs, as administratrix of the estate of Nathaniel Gibbs, commenced the present civil action by filing her complaint in the Circuit Court of Warren County, Mississippi. Adminis-tratrix Gibbs asserted a claim under the FELA, 45 U.S.C. §§ 51, 59, and named the ICG as defendant.
The matter originally appeared before this Court on the claim of one Andrea Denise Allen, a minor, that she was the natural daughter of Nathaniel Gibbs and hence a statutory beneficiary. This Court affirmed the decision of the Circuit Court dismissing Allen’s claim and holding on the facts that the FELA wrongful death beneficiaries in the premises were Nathaniel’s parents, Albert Gibbs (prior to his death) and Willie Mae Gibbs. See Ivy v. Illinois Central Gulf Railroad Co., 510 So.2d 520 (Miss.1987).
On remand, and prior to trial on the merits, ICG moved in limine that adminis-tratrix Gibbs’ claim for damages be limited
to the pecuniary loss that Albert Gibbs, father of Nathaniel Gibbs, sustained up to the date of his death and the pecuniary loss that Willie Mae Gibbs, the mother of Nathaniel Gibbs, has and will sustain during her life expectancy as result of the death of Nathaniel Gibbs.
The Circuit Court granted the motion, and the matter proceeded to trial on the merits on October 4,1988. The following day, the jury returned a verdict in favor of adminis-tratrix Gibbs against ICG in the amount of 1140,000.00.
ICG timely filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial or, in the alternative, for a remittitur. The thrust of the motion was ICG’s complaint that the jury had before it evidence of pecuniary losses to persons other than Albert Gibbs and Willie Mae Gibbs and that the instructions the Circuit Court had given the jury did not adequately preclude its considering this impermissible proof in assessing damages. On February 1, 1989, the Circuit Court rejected ⅛¾ premises and denied the alternative motions.
ICG now appeals to this Court.
III.
We are concerned this day solely with the damages points adjudged in the post-trial motions, but at the outset a few preliminaries need be noted.
The right administratrix Gibbs asserts this day is a creation of the federal sovereign. In 1908 the Congress enacted the Federal Employers’ Liability Act (FELA) and prescribed a regime of concurrent federal and state jurisdiction. 45 U.S.C. § 56. The plaintiff — an injured railroad worker or his or her personal representative — has been empowered at his or her election to proceed in federal or state court of otherwise competent jurisdiction. Administratrix Gibbs has chosen the courts of this state. See Missouri Pacific Railroad Co. v. Tircuit, 554 So.2d 878, 880 (Miss.1989). What this means is that we are duty-bound to enforce the federal law as the Congress has provided it and as the federal courts have read it.[1] See, e.g., Illinois Central Railroad Co. v. Coussens, 223 Miss. 103, 113, 77 So.2d 818, 821 (1955).
The FELA provides an action for wrongful death, and to the point of who may *947 recover and how those damages should be measured, the act reads:
Every common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee’s parents; and, if none, then of the next of kin dependent upon such employee for such injury or death....
45 U.S.C. § 51.
The Act thereafter provides that, in the event the injured employee should die, his action
shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, and, if none, then of such employee’s parents; and, if none, then of the next of kin dependent upon such employee, but in such cases there shall be only one recovery for the same injury.
45 U.S.C. § 59.
FELA wrongful death plaintiffs may recover for pecuniary loss only. Settled readings preclude recovery for “damages by way of recompense for grief or wounded feelings” or “losses which result from the deprivation of society and companionship” of the deceased. See Michigan Central Railroad Co. v. Vreeland, 227 U.S. 59, 70-71, 33 S.Ct. 192, 196, 57 L.Ed. 417, 422 (1913), and progeny, e.g., Petition of M/V Elaine Jones, 480 F.2d 11, 32 (5th Cir.1973). Pecuniary loss, of course, may not be measured with precision and is necessarily a function of foresight beyond the day of trial, and so the courts have elaborated the pecuniary loss rule to provide a recovery measured by the statutory beneficiary’s reasonable expecta tion of pecuniary benefit from the continued life of the deceased had he lived, calculated according to present values. Chesapeake and Ohio Railway Co. v. Kelly, 241 U.S. 485, 489, 36 S.Ct. 630, 631-32, 60 L.Ed. 1117 (1916); Southern Railway Co. v. Neese, 216 F.2d 772, 775 (4th Cir.1954); Stark v. Chicago, North Shore and Milwaukee Railway Co., 203 F.2d 786, 788 (7th Cir.1953); Ivy v. Illinois Central Gulf Railroad Co., 510 So.2d at 529.
Unlike many wrongful deaths acts, the FELA creates alternative classes of beneficiaries, three in number, and provides a hierarchical ranking, leaving no doubt that second or third class beneficiaries may recover only if there is no person fitting the description of a higher class. To be specific, the FELA prefers “the surviving widow or husband and children of such employees.” Class II beneficiaries are “such employee’s parents.” Finally, the Act says, in the event there is no surviving spouse, child, or parent, dependent next of kin may recover. What is important — and what the Supreme Court has repeatedly made clear — is:
There are, thus, three classes of possible beneficiaries. But the liability is in the alternative. It is to one of the three; not to the several classes collectively.
Chicago B. & Q.R. Co. v. Wells-Dickey Trust Co., 275 U.S. 161, 163, 48 S.Ct. 73, 73, 72 L.Ed. 216, 217 (1927). The Court has reaffirmed this view repeatedly. See, e.g., Gillespie v. U.S. Steel Corp., 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199, 205 (1964). And when the action accrues,
there is an immediate, final and absolute vesting; and the vesting is in that one of the several possible beneficiaries who, according to the express provisions in the statute, is declared entitled to be compensated.
Chicago B. & Q.R. Co. v. Wells-Dickey Trust Co., 275 U.S. at 163, 48 S.Ct. at 74, 72 L.Ed. at 217.
Applying these views to today’s case, we find, first, that there are no Class I beneficiaries. Nathaniel Gibbs was never married, and the first appeal in this case settled that he left no surviving children. Ivy v. Illinois Central Gulf Railroad Co., 510 So.2d at 525, 530. At the time of his death, however, both of Nathaniel’s parents, Albert Gibbs and Willie Mae Gibbs, were living. Under the law, effective July 18, 1979, Albert Gibbs and Willie Mae Gibbs became vested with a right to recover such pecuniary losses as they may have *948 sustained as result of the wrongful death of their son. This excludes any Class III beneficiaries such as Nathaniel’s seventeen-year-old brother, Alfred, or his fifteen-year-old sister, Malinda, or his eighty-one-year-old grandmother, Georgia Miles.
We do not inquire whether Nathaniel’s parents were dependent upon him for their support and maintenance. See Moffett v. Baltimore & Ohio R. Co., 220 F. 39 (4th Cir.1914); Raines v. Southern Ry. Co., 169 N.C. 189, 85 S.E. 294 (1915); Veron v. Veron, 228 Ky. 56, 14 S.W.2d 185 (1929); Tobin v. Bruce, 39 S.D. 64, 162 N.W. 933 (1917). Dependency becomes important only for those persons who are Class III beneficiaries.
We thus have firm grounding in the law for the Circuit Court’s unequivocal and continuous holding that administratrix Gibbs was of right entitled to recover the present value of her and her husband’s reasonable expectation of pecuniary benefits from Nathaniel’s life, had he lived.
IV.
Our rules of law, though a bit arbitrary, if not artificial, are thus clear and before us. The question is whether they were observed faithfully in the Circuit Court. Few, if any, live their lives with regard to such legal niceties, and the Family Gibbs was no exception. Nathaniel’s death nor his FELA action were hardly matters to have been anticipated prior to July 18, 1979. The Circuit Court correctly sustained ICG’s motion in limine, but the question became how, as a practical matter, that ruling regulating today’s measure of damages might be observed.
The evidence shows Nathaniel a major provider for the entire six-person household, pre-July 18, 1989. He had purchased and made payments on an automobile which benefited not only Willie Mae Gibbs and, until his death, Albert Gibbs, but also Nathaniel’s brother, sister and grandmother. He bought gas for the car, paid for repairs and maintenance. He purchased groceries that were for the benefit of all. He maintained charge cards with businesses such as Sears, McRae’s and Gayfers, and paid their billings. Beyond this, Nathaniel provided services that benefited the entire household:
He did most everything around the house. He kept the house up. He was an electrician. He was a plumber. He was a carpenter. He was a little of every thing.
That the proof was in less than precise accounting form does not command reversal. Indeed, the record is replete with ICG’s efforts to hold down recoverable damages by making sure that the jury knew that much of Nathaniel’s paycheck went to provide for others in the household in addition to his mother and father.
In the end, our question becomes whether the Circuit Court correctly instructed the jury. Here, we find no less than six separate instructions addressing assorted niceties of the rules articulated above. First, Instruction P-2 tells the jury administratrix Gibbs can recover for the present economic value of anticipated benefits from Nathaniel’s life, had he lived, and the value of services he could reasonably have been expected to perform, but limits those to contributions and services provided his parents only.[2] Instruction P-8 is to *949 like effect, limiting recovery to pecuniary losses of “Willie Mae and Albert Gibbs.”[3]
So far, so good.
Turning to instructions granted at ICG’s request, we find Instruction D-l explaining the same rules just discussed and adding in unmistakable language:
You are further instructed that you are not to include in your verdict, if you do find for Plaintiff, any pecuniary loss which you may find that any member of the family of Nathaniel Gibbs other than his mother and father has sustained as a result of his death.[4]
Instruction D-2 explains the three classes of wrongful death beneficiaries provided by the FELA and emphasizes the priorities given each class, telling the jury that “only one of the three classes of persons may recover ... all three classes cannot recover.” [5] Finally, the Circuit Court granted ICG’s Instruction D-5, which told the jury that it could not include in damages awarded Plaintiff:
Any amount which was or is a pecuniary loss sustained by other members of the family of Nathaniel Gibbs as a result of his death.[6]
*950 Laboriously, ponderously, redundantly, but unmistakably, these five instructions make clear to the jury the legal principles articulated in Part III above. ICG, nevertheless, argues that the Circuit Court blew it all when it granted administratrix Gibbs a further instruction, labeled Instruction P-7 A. This instruction begins harmlessly enough:
The Court instructs you that the plaintiff is entitled to receive all damages reasonably proved that resulted from the pecuniary loss of contributions made to or for the benefit of Willie Mae and Albert Gibbs by Nathaniel Gibbs had he not been killed.
Repetitious, yes. Awkwardly worded, yes. But legally correct. The fly in the ointment is . said to be the next sentence:
If you so find from the evidence that the pecuniary loss suffered by Willie Mae and Albert Gibbs consisted, in part, of such contributions for their benefit in the form of pecuniary benefits to dependent members of the household of Willie Mae and Albert Gibbs, then such benefits are a part of the pecuniary losses suffered by the plaintiff
[Emphasis supplied]
ICG argues that the second sentence of Instruction P-7A impermissibly collapses the second and third classes of FELA wrongful death beneficiaries and, in effect, told the jury that, in computing damages, it could consider Nathaniel Gibbs’ contributions to his younger brother and sister and his elderly grandmother. With regard to Instructions P-2, P-8, D-l, D-2, D-5, (and, indeed, the first sentence of P-7A), ICG acknowledges our general rule that all instructions must be read together but insists that this does not save a judgment from reversal where an erroneous instruction is given on a vital issue and where that instruction is in conflict with other correct instructions given the jury. McHale v. Daniel, 233 So.2d 764, 768 (Miss.1970); Rayborn v. Freeman, 209 So.2d 193, 197 (Miss.1968); Y & M.V.R.R. Co. Hawkins, 159 Miss. 775, 780-81, 132 So. 742 (1931).
Without doubt, Instruction P-7A is a classic example of partisan counsel’s penchant for drafting instructions slanted as much in his client’s favor as he dare. Still, the instruction seems to survive. The critical second sentence does allow the jury to consider Nathaniel’s contributions to “the dependent members of the household of Willie Mae and Albert Gibbs.” But it provides that these contributions may be considered only if they constituted a part of “the pecuniary loss suffered by Willie Mae and Albert Gibbs.” Contributions to other members of the household are recoverable only if Nathaniel made them “for their [Willie Mae and Albert Gibbs’] benefit.”
What is critical here is that the FELA imposes no dependency requirement upon the pecuniary loss Class II beneficiaries — parents—may recover. It is enough that Willie Mae and Albert Gibbs were Nathaniel’s parents. FELA allows them to recover the present value of their reasonable expectation of pecuniary benefit from the life of Nathaniel Gibbs, had he lived, and whether they may have been de jure or de facto dependents of Nathaniel Gibbs is of no moment. Nor is it of any moment what Nathaniel’s parents may reasonably have been expected to do with the money that they may reasonably have expected to receive from him. Amounts reflecting Nathaniel’s parents’ reasonable expectation of pecuniary benefits from his continued life, had he lived, are recoverable, whether the parents may reasonably have been expected to use that money to buy a new car, to take a trip to Europe, or to provide for others in the household, such as seventeen-year-old brother Alfred, fifteen-year-old sister Malinda, or eighty-one-year-old grandmother Georgia Miles.
It is true that, in light of the form of the proof alluded to above, the second sentence of Instruction P-7 A without more might not preclude the jury’s thinking of direct contributions Nathaniel may have made to members of the household other than his parents. Instruction D-5, however, unequivocably precludes the jury considering any pecuniary loss sustained by other members of Nathaniel’s family, and the third sentence of Instruction D-l redundantly does exactly the same thing. *951 Less blatantly, Instructions P-2, P-8 and D-2 explain that recovery may be had only for the pecuniary loss of Nathaniel’s parents, Willie Mae and Albert Gibbs. Here is the proper occasion for applying our familiar rule that jury instructions are to be considered as a whole, that they need not be perfect in form or expression, and that, where an ambiguity in one is clarified in (as many as five) others, reversal is not required. Purina Mills, Inc. v. Moak, 575 So.2d 993, 996 (Miss.1990); Payne v. Rain Forest Nurseries, Inc., 540 So.2d 35, 40 (Miss.1989); Middleton v. Evers, 515 So.2d 940, 942 (Miss.1987).
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.

. For a perceptive evaluation of the current status and viability of the FELA, see Phillips, An Evaluation of the Federal Employers' Liability Act, 25 San Diego L.Rev. 49 (1988).

. Instruction P-2 reads in full as follows:
Should your verdict be for the Plaintiff, you may consider the following factors in determining the amount of damages to be awarded the Plaintiff as may be shown by a preponderance of the evidence:
1. The amount of money, if any, reasonably anticipated to be contributed to Plaintiffs for their lifetime by the decedent, Nathaniel Gibbs had he lived, stated as a lump sum; and,
2. The economic value of services of Nathaniel Gibbs, if any, on behalf of Plaintiffs that could be reasonably anticipated to be performed by him for Plaintiffs benefit over their lifetime had Nathaniel Gibbs lived, stated as a lump sum.
These factors shall then be totalled to arrive at a lump sum verdict to be awarded to the Plaintiffs against the Defendant.
This instruction must be read with Instruction P-1 which defines Plaintiffs to include Willie Mae Gibbs and her husband, Albert Gibbs.

. Instruction P-8 in its entirety reads as follows:
You are instructed that the Plaintiff, Mrs. Willie Mae Gibbs, as Administratrix of the Estate of Nathaniel Gibbs, is entitled to recover for all damages reasonably shown that resulted from the pecuniary loss of contributions made to or for the use and benifit (sic) of Willie Mae and Albert Gibbs by the decedent, Nathaniel Gibbs, for their respective lifetimes had their son not been killed. In assessing those damages, you are to award to the Plaintiff such pecuniary damages reasonably shown that you may find that Willie Mae and Albert Gibbs suffered or will suffer as a direct consequence of the death of Nathaniel Gibbs. The facts in this case establish that Albert Gibbs died forty-two (42) months after the death of Nathaniel Gibbs. The pecuniary loss suffered by Willie Mae Gibbs may be estimated to the end of the probable duration of her life expectancy, which is estimated to be 24.2 years from the death of Nathaniel Gibbs.

. Instruction D-l in its entirety reads as follows:
The Court instructs the jury that if you find for the Plaintiff, you shall base your verdict on the following:
1. The cash value of the pecuniary benefits which Willie Mae Gibbs, the mother of Nathaniel Gibbs, might reasonably have expected to receive during her life expectancy from Nathaniel Gibbs if he had lived.
2. The cash value of the pecuniary benefits which Albert Gibbs, the father of Nathaniel Gibbs, might reasonably have expected to receive from Nathaniel Gibbs up to the date of Albert’s death on the March 27, 1983, if Nathaniel Gibbs had lived.
You are further instructed that you are not to include in your verdict, if you do find for Plaintiff, any pecuniary loss which you may find that any member of the family of Nathaniel Gibbs other than his mother and father has sustained as a result of his death. Such pecuniary benefits shall be the actual losses which can be measured in money which you find that Albert Gibbs sustained up to the date of his death and which Willie Mae Gibbs sustained during her life expectancy as a result of the death of said Nathaniel Gibbs. In arriving at such figure you are not to include any amount for loss of society, love or companionship, pain and suffering, funeral expenses, any amount which you may think Nathaniel Gibbs might have earned during his life time or the value of his estate if he had lived.

. Instruction D-2 in its entirety reads as follows:
The Court instructs the jury that this is an action brought by Plaintiff as Administratrix of the Estate of Nathaniel Gibbs against Defendant Railroad under the Federal Employers’ Liability Act.
That Act was adopted by the United States Congress and governs the relationship between Railroads and their employees in matters of this kind.
That Act provides that in a case such as this, claim for the death of a Railroad employee may be brought against the Railroad by the Administrator of the employee’s Estate for the benefit of the surviving widow or husband and children of the employee; and if none, then for the use and benefit of the employee’s parents; and, if none, then for the next of kin dependent upon such employee at the time of his death.
Only one of the three classes of persons may recover for the death of the employee and in the order as stated. All three classes cannot recover. The basis for such recovery is set forth in another instruction which the Court gives you. These instructions are the law which you are to follow in reaching your verdict in this case.

. Instruction D-5 reads in its entirety:
The Court instructs the jury that if you find for the Plaintiff in arriving at your verdict you are not to include by way of pecuniary loss to Plaintiff as the mother of Nathaniel Gibbs, any amount which was or is a pecuniary loss sustained by other members of the family of Nathaniel Gibbs as a result of his death.