CASE 31—ACTION ON NOTE—MARCH 22.

# Cunningham's Administrator, Etc. v. Speagle.

APPEAL FROM FAYETTE CIRCUIT COURT.

1. EVIDENCE—TRANSACTION WITH DECEDENT.—In an action on a promissory note alleged to have been executed by mark by a person who is dead at the time of the trial the plaintiff is not a competent *witness to prove either (1) the execution of the* writing by the decedent, or (2) the hand-writing of the attesting witness, or (3) the execution of an exectuory contract out of which the note was claimed to have arisen.

2. SAME.—In such an action it is error to permit plaintiff's attorney to testify as to a credit on the note and especially to detail the statements made to him by the plaintiff with reference to such payment.

3. ATTORNEY—MISCONDUCT OF.—It was error, if objected to, to per-

mit counsel for the plaintiff to state to the jury his reasons for not bringing as witnesses the members of the family of the attesting witness to prove the genuineness of his signature.

B. T. SOUTHGATE AND GEORGE R. HUNT FOR THE APPELLANT.

1. It was error to permit plaintiff to state that she saw Armstrong sign his name to the note as an attesting witness; and further, that she was familiar with the signature and hand-writing of Armstrong and that his name as it appeared in the note was in his hand-writing. Civil Code, sec. 606, sub-sec. 2; Holliday v. McKinnie, 22 Florida, 153; Maverick v. Marvel, 90 N. Y., 656; Koehler v. Adler, 91 N. Y., 657; Berry v. Stevens, 69 Maine, 290; Jones on Evidence, vol. 3, 793; Gist v. Gaust, 30 Ark, 285; Anchampaugh v. Schmidt, 72 Iowa, 656; Howard v. Zimpleman, 14 S. W. R., 59; Dicken v. Winters, 169 Penn. St., 126; Hurry v. Kline, 93 Ky., 358; Hardin's Admr. v. Taylor, 78 Ky., 593.

2. The verdict is not supported by the evidence.

3. It was misconduct of counsel for the defendant to comment in his argument to the jury upon the deposition which had been excluded by the court.

(No appearance for the appellee.)

JUDGE GUFFY DELIVERED THE OPINION OF THE COURT.

On the 17th of February, 1896, the plaintiff (now appellee), Ella C. Speagle, instituted this action in the Fayette circuit court against the appellants. It is substantially alleged in the petition that Rachel Cunningham on the 9th of June, 1887, executed to the plaintiff her promissory note for $150, due in 36 months, with interest at 6 per cent. The petition also shows that the obligor is dead, and that Marshall is her administrator, and that the other defendants are heirs at law. Said note reads as follows:

"Lexington, Ky., June 9th, 1887. Thirty-six months after date, I promise to pay to Ella C. Speagle one hundred and fifty dollars, with interest at six per cent.

her<br>
"Rachel X Cunningham.<br>
mark

"Witness:  J. M. Armstrong."

It further appears from the petition that the note is entitled to a credit of $12.50 as of the date of the note.

The first paragraph of the answer is a plea of *non est factum*, and the second paragraph pleads no consideration.

The reply denies that the note was without consideration, but does not show what the consideration was. A jury trial resulted in a verdict and judgment for plaintiff for $137.50, with interest "from this date," and costs. The date of the rendition of the judgment seems to be February 5, 1897. Defendants' motion for a new trial having been overruled, they prosecute this appeal.

The grounds relied on for a new trial are, in substance, as follows: (1) Error of the court in admitting improper and incompetent evidence to go to the jury, and in excluding proper and competent evidence (2) Because the verdict is not sustained by the evidence, and is contrary to the law. (3) Because of misconduct of plaintiff's attorney in commenting on evidence in his argument before the jury.

The plaintiff was introduced as a witness on her own behalf, and stated that she knew Rachel Cunningham, and had known her from childhood, and that she died in 1890 or 1891, and had no property, that witness knew of, except her home, on De Rood street. J. M. Armstrong was a tenant of witness in 1887, and died in 1890. She was then asked whether she saw J. M. Armstrong sign his name as attesting witness to the note, to which objection was made by defendants, and sustained by the court. She was next asked whether or not she was familiar with the handwriting of J. M. Armstrong, from having seen him write. She answered: "Yes; I am." The next question was: "Then, from your familiarity with his handwriting, I will ask you whether his name, as appears on that note, is his handwriting. Is that his handwriting?" Defendants objected,

which objection was overruled, with exceptions. The witness answered: "Yes; that is his writing—his signature." The note was then offered in evidence, and over defendants' objection was read to the jury, and also shown to them. The contract was then shown to the witness, which was also attested by the signature of J. M. Armstrong, and over the objection of defendants she was permitted to prove the handwriting of Armstrong; and the contract was then read in evidence. The contract reads as follows:

"Lexington, Ky., June 9th, 1887. This contract between Ella C. Speagle and Rachel Cunningham, made this day, witnesseth that Ella C. Speagle agrees to loan Rachel Cunningham the sum of one hundred and fifty dollars, to be paid in installments as Rachel Cunningham needs it; and, as soon as the entire one hundred and fifty dollars is paid, Rachel Cunningham agrees to execute a mortgage to Ella C. Speagle on her house on De Rood street. Rachel Cunningham authorizes Ella C. Speagle to sign her name to all receipts, to the amounts delivered to her, when they are delivered.

"Ella C. Speagle.

her

"Rachel X Cunningham.

mark

"Attest: · J. M. Armstrong."

The testimony of plaintiff tends to show that she (plaintiff) was at the time worth several thousand dollars, and that Rachel Cunningham was an old negro, probably 65 years old; that she was very poor, and had nothing except her property on De Rood street, which was worth $150 or $200; and that she made a living by washing for negroes, and raised a little garden in her yard. Armstrong was a brakeman on the Cincinnati

Southern Railroad, and he died in 1890 or 1891. His mother and family live in Lexington. I have seen him write a number of times, but I have no writing done by him. I am not in the habit of lending money to negroes."

It was then admitted that the note and contract, and the name of Rachel Cunningham signed thereto, are all in the handwriting of plaintiff, Ella C. Speagle.

The next witness was the attorney for plaintiff, who stated that he was the attorney for plaintiff, and that he put the $12.50 credit on the back of the note sued on, and that he put the credit there at plaintiff's request; she having told him that she had furnished $12.50, less than the $150. To all these statements defendant's attorney excepted.

Plaintiff's attorney then offered in evidence various receipts, purporting to be the receipts of Rachel Cunningham to Speagle, in amounts from one to three dollars, all in Speagle's handwriting, and signed, "Rachel Cunningham, her mark;" but no mark is put in, and no attesting witness.

George Stout testified that J. M. Armstrong was his brother-in-law, and that he had known him all his life; that Armstrong could write his name, but not well; that witness was familiar with his handwriting, and knew his signature. Armstrong's alleged signature being shown to him, he said: "That is not his signature. He can not write near that well. Am positive, from my familiarity with his handwriting, that it is not his writing. I knew Rachel Cunningham very well and she was very poor; had nothing but her house and lot on De Rood street, and washed for negroes." The statement of counsel in his argument, complained of, is as follows: "In reply to Mr. Southgate's comment on my not bringing Armstrong's

family here to prove his signature, I will say that this was originally a chancery case, and in such cases depositions are allowable, and I took the deposition of Underwood, who was Armstrong's father-in-law, to prove his signature, but the court would not allow it read; and my client ought not to suffer on account of the ignorance of her attorney." To all of which defendants objected and excepted.

It is perfectly manifest that the court erred in allowing plaintiff's attorney to testify as to the $12.50 credit being placed upon the note, and especially to detail the statement made concerning the same to him by the plaintiff. We are further of opinion that the statement of the attorney in his argument to the jury should not have been made or permitted, if objected to. The receipts offered in evidence do not appear to be copied in this record, and we can not, therefore, pass on the question of their admissibility as evidence. We are further of opinion that the execution of the so-called contract in regard to the mortgage should not have been admitted, first, because its execution was not sufficiently proven, if, indeed, the contract was evidence at all, which might be well doubted.

It is earnestly insisted for appellants that the court erred in allowing plaintiff to testify that the signature of the subscribing witness to the note was the handwriting or genuine signature of the witness. Subsection 2, of section 606, provides, in substance, that no person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done by an infant under fourteen years of age, or by one who is of unsound mind or dead, when such testimony is offered to be given, except for the purpose and to the extent of affecting one who is alive, and who, when over fourteen years of age and of sound mind, heard such statement,

or was present when such transaction took place or when such act was done or omitted; subject, however, to several exceptions as stated in the Code, none of which are claimed to exist in the case at bar.

The main question for decision is whether the proof of the genuineness of the handwriting of the witness can be made by the plaintiff herself, the alleged obligor being dead. It has been repeatedly held by this court that the object of the statute *supra* was to place the decedent and his live antagonist upon a perfect equality, and, inasmuch as the decedent could not speak or testify of the transaction, that the party claiming the right to enforce the same, or deriving a benefit therefrom, should not be heard to testify in respect thereto.

It is said in Underhill on Evidence (page 441): "The rule excluding the evidence of a personal transaction with a deceased person operates to prevent the survivor from testifying to the contents of a letter sent to the deceased, or to the fact that the letter was delivered to him, though it does not prevent the introduction of the writing executed by him. The writing can not be explained by the testimony of a party or interested witness. * * *"

And on page 442 it is said: "The prohibition of the introduction of evidence of a personal transaction with deceased should be construed, not only to prevent the introduction of direct proof of such a transaction, but to prevent its proof by indirection as well. So the surviving party ought not to be permitted to attempt to prove a transaction inferentially by offering evidence that some third person did not do the thing which deceased is alleged to have done, or by disconnecting any particular fact from its surroundings, and prove it as a seemingly independent fact, when in truth it originated in, was caused by or was

connected with a personal transaction, evidence of which is inadmissible."

In Jones on Evidence, vol. 3, sec. 793, it is said: "The term 'transaction,' which is used in nearly all the statutes, has not been given any very definite meaning by the courts. Whatever may be done by one person which affects another's rights, and out of which a cause of action may arise, is a transaction. It is a broader term than 'contract,' for while every contract is a transaction, every transaction is not a contract. But the courts have interpreted the term as the justice of each case seemed to demand, rather than by any abstract definition, as will be seen by a few of the decided cases. The execution of a note by a deceased person, or the delivery of a letter or of property, is such a transaction with the deceased as to render the adverse party incompetent to testify to the same, under the statute. * * Nor can he testify that the account sued on is correct, or that the work done has not been paid for, or as to the kind of work done, or what pay . was expected for the same, or that the note in question had been paid, or that the money had been deposited with the deceased or incompetent person."

The supreme court of Florida, in Holliday v. McKinne, 22 Fla. 161, had under consideration the question of proving the signature of a deceased person to a writing. In that case the witness was permitted to answer that the signature was in the handwriting of E. K. Holliday, deceased; the object being to prove the execution of the writing. The question as to whether McKinne was competent to prove the signature to the bill of sale was raised by exception to the question and answer. The court then said: "The statute provides that 'no party to such action or proceeding, nor any person interested in the event

thereof,   *   *   *   shall be examined as a witness in re-
gard to any transaction or communication between such
witness and the person at the time of such examination de-
ceased, etc., etc.   The bill of sale alleged to have been
signed by the deceased transferred title to the property
therein mentioned to the plaintiff.   Was not such transfer
the very transaction which consummated the right of plain-
tiff to the recovery, and upon which alone he based his
right of action?   The word 'transaction' is defined to mean
'the doing or performing any business; the management
of an affair.'"   On pages 162 and 163 it is said: "It seems
to us that the proof of the signature to the bill was prov-
ing the very 'transaction,' or proving both the acts and
doings of the plaintiff and the defendant which amounted
to consummating the sale of the property by defendant
to this plaintiff.   The sale of the property and the execu-
tion of the bill of sale was the 'transaction,' and the proof
of the bill of sale was proof of the transaction."

In Bruster & Maverick v. Marvel, 90 N. Y., 656, the New
York Court of Appeals, in substance, said: "It seems that
when the mere fact that a party has had conversations
with a deceased person, to whom the opposite party stands
in the relation specified in the provisions of the Code of
Civil Procedure in reference to the testimony of parties
(section 829) is a material question, it is not competent for
such party to testify that he had the conversation."

In Koehler v. Adler's Admr. 91 N. Y., 657, it was claimed
by plaintiff that the loan was made by check given by him
to defendant's intestate.   The defendants claimed that the
check was given in the business of the Stonewall Oil Com-
pany, of which corporation deceased was president, and
plaintiff treasurer.   The latter kept no separate bank
account of the funds of the corporation, but deposited them

Cunningham's Admr., &c., v. Speagle.

in his own name, and drew his individual checks, which payments were made on corporate contracts or liabilities. The plaintiff offered himself as a witness on the trial, and was asked by counsel whether the check in question had anything to do with the affairs of the Stonewall Oil Company. This was objected to on the ground that it called for a personal transaction with the deceased, and was incompetent, under section 829 of the Code. The objection was sustained, and it was claimed that the ruling of the court in excluding the evidence was erroneous. The court then said: "We are of opinion that this point is not tenable. The check, on its face, imported a personal transaction between the plaintiff and the intestate. The point in issue was whether it related to an individual transaction of Koehler's, or to a transaction by him as treasurer of the Stonewall Oil Company. The giving of the check was consistent with either theory, and, when the witness was asked whether it had anything to do with the affairs of the Stonewall Oil Company, he was called upon by his answer to characterize the transaction either as an individual or a corporate one. The answer to the question would necessarily show what the transaction was, and the plain purpose of the inquiry was to negative the possible inference from the circumstances that the check was given by the plaintiff as treasurer of the oil company."

In Howard v. Zimpleman (decided by the supreme court of Texas) [14 S. W., 59], the court, in discussing the question under consideration, said: "It is error to allow plaintiff to testify as to his reception of the instrument through the post office with a certain post mark, for the purpose of proving the delivery thereof by the deceased grantor, since such delivery is a 'transaction' with the deceased, within the meaning of Rev. St. Tex. art. 2248, prohibiting a party

to an action against the heirs of a deceased person from testifying as to any transaction with such decedent."

In Hurry v. Kline, 93 Ky., 358, [20 S. W., 277], it appears that appellee executed a note to J. T. Irvin, who assigned it to appellant. The appellee pleaded no consideration, and was permitted to testify as to what took place concerning the execution and consideration of the note between himself and Irvin, who had died. The court in that case said: "And the decisive question before us is whether that testimony is competent; as, without it, his only defense must, as the record now appears, fail." The court then, after quoting sections 605 and 606 of the Code, said: "If Irvin had died owner of the note, and this was an action by his personal representative to recover judgment thereon, or even if appellant had, by reason of the assignment to him, recourse on decedent's estate, the testimony in question would, we think, be certainly incompetent. But it seems to be conceded that, if appellant ever had such recourse, it has been lost; and so the estate of the deceased assignor will not be affected by determination of this action one way or another. Nevertheless, we think there can be, according to the plain language used, no question of cases like this being comprehended by the exceptions to, and modifications of, section 605 that are contained in subsection 2 of section 606; for it is there provided in explicit terms that no person shall testify for himself concerning any verbal statement of, transaction with, or act done or omitted to be done by, one who is dead, when the testimony is offered to be given, except under circumstances and conditions recited, none of which exists in this case. Yet that is precisely what appellee did do on trial of this action in the lower court; for the statements of and transactions with the deceased, Irvin, concerning which he was permit-

ted to testify, had a direct, and, without doubt, decisive, bearing in his favor upon the only issue involved.

"Before thus disregarding or restricting the natural and obvious meaning of the words of a statute, the court should be convinced an imperative reason for doing so exists. We do not now perceive any reason for excluding such testimony in an action by the personal representative of one who is dead that does not exist in full force in a case like this.

"The issue here presented is one of fact, involving an inquiry for the simple truth, not at all changed or affected by death, but to be sought for according to rules of evidence intended to operate justly, equally, and mutually between the parties, no matter who they may be. It does not, therefore, make any difference whether the personal representative of a deceased payee or the assignee of a note be party plaintiff in an action to recover on it; to permit the defendant to testify for himself concerning what was said or done by the decedent, thereby affecting the issue involved, without the presence or power of any one to speak for the dead man, would give him an unjust and unfair advantage in one case just as much as, no more than, the other, which the Legislature did not intend for him to have, but carefully and particularly framed subsection 2 of section 606 to prevent.

"In Harpending v. Daniel, '80 Ky., 449, the question was whether, in an action against an executor to recover on a protested check given to a firm, a member of the firm, who had assigned his interest to the other member, could, under the Civil Code, testify to what was said and done concerning time for presenting the check for payment, by an agent in reference thereto, who was then dead. And it was there held that, as the agent with whom

[19]

the transaction was had was dead, the opposing party could
not testify on the subject, even if the principal was alive,
because, as said (quoting from Hardin's Adm'r. v. Taylor,
78 Ky., 593), 'The evident design of section 606 was to
place parties to an action, or those interested therein, on an
equal footing when their rights are being passed on.'

"There are cases cited by counsel with the purpose of
sustaining ruling of the lower court in this case, but, with-
out referring to them in detail, we are satisfied that no one,
when properly understood, sustains the proposition that
one party, whether for or against a personal representative
or assignee of one who is dead, can testify for himself con-
cerning what the decedent said or did affecting the issue
being tried.

"We think the evidence of appellee, to which reference is
here made, was clearly incompetent, and, as it materially
prejudiced the rights of appellant, the judgment is re-
versed, and cause remanded for a new trial consistent with
this opinion."

It is true that this court, in Meazels v. Martin, 93 Ky.,
50, [18 S. W., 1028], decided that the provisions of the stat-
ute and Code of Practice in regard to the attestation
by a witness of a signature, where the same is made by
mark, applies only to documents which by law are required
to be witnessed, and that a note signed by a mark, with-
out an attesting witness, if in fact the obligor authorized
his name to be signed to the document, is valid and en-
forceable, the effect of which seems to show that an at-
testing witness is not necessary to the validity of a note
executed and delivered, although not signed by the obligor
in his own handwriting.

It is, however, manifest from the pleadings
in this case that the execution and attestation
of the note in controversy was one and the same transac-

tion, and clearly, according to plaintiff's own averments, a transaction or contract had with the decedent Rachel Cunningham; hence it follows that any statement of plaintiff as to the genuineness of the signature either of the obligor or the attesting witness was proof of a transaction had with a deceased person, and therefore clearly incompetent, under all the authorities hereinbefore quoted.

It seems to be conceded by appellants that the genuineness of the handwriting of the witness may be proven by a competent witness. At any rate, that question is not presented for decision. For the errors indicated, the judgment appealed from is reversed, and cause remanded for a new trial upon principles consistent with this opinion.