**DUDLEY'S ADM'R et al. v. FIDELITY & DEPOSIT CO. OF MARYLAND et al.**

Court of Appeals of Kentucky.

May 29, 1951.

J. A. Edge, Lena M. Craig, Lexington, Melville D. Hayes, Wilmington, Ohio, for appellants.

Stoll, Keenon & Park and Neil G. Sullivan, all of Lexington, for appellees.

STEWART, Justice.

The only question to be determined on this appeal is whether Elnora Brown, otherwise known as Ella Nora Bush, an infant now age 12, is the legitimate daughter of Alger Brown, deceased, hereafter called Alger, and is entitled as his sole heir-at-law to the whole of his estate, subject to the share allotted by law to Lorene Brown, hereafter called Lorene, the widow of the decedent and the mother of the infant. Alger Brown died intestate, leaving property valued at approximately $50,000.

A summary of the facts shows that Lorene married Davis Bush in 1926, but she claims she separated from him in 1928 and did not live with him as his wife thereafter. Alger married Armelda Combs in 1918 and left her two years later for another woman. Alger was in the restaurant business at 200 Northeastern Avenue in Lexington, Kentucky, and Lorene was hired by him as a cook about the middle of 1938. She immediately began rooming directly across the street from her place of work in the same house where Alger was living with his mother, Victoria Brown, and his woman friend, Corene Granville Carter. Only a hallway separated the rooms of Lorene and Alger. According to Lorene, it was not long before Alger was paying court to her, chiefly at night, with the result that in August of 1938 she became pregnant. On May 15, 1939, she give birth to a female child. Corene Granville Carter left Alger soon after Lorene's baby came. Subsequently, Lorene and Alger lived together intermit-

tently, but she left him when the child was about seven months old. In 1941 Alger installed another woman in his home by the name of Leona Byrd with whom he lived until 1942 and by whom he had another female child. On December 22, 1944, Alger was divorced from Armelda Combs and Lorene from Davis Bush. On February 8, 1945, Alger and Lorene were married and they lived as husband and wife until his death on September 16, 1946.

A certified copy of the birth certificate was introduced at the trial which revealed the name of the child as "Ella Nora Bush" and the name of the father as "Davis Bush". Dr. H. A. Merchant, who filled out the certificate, testified that he obtained the facts contained therein from Lorene, but she denied she told him Davis Bush was the father of the child. Several witnesses gave proof to the effect that Alger recognized and acknowledged the child as his, that he provided all the necessities for the child, that, before and after his marriage to Lorene, he publicly claimed the child as his, and that the child always went under the name of Elnora Brown. "Exhibit C" in the record is an industrial insurance policy with the Atlantic Life Insurance Company, dated May 20, 1940, on the life of Elnora E. Brown, then age 1. The beneficiary in the policy is Alger and his relationship to the insured is described therein as father. It is uncontradicted that Alger procured and paid the premiums on this policy during his lifetime. "Exhibit No. 4", also in the record, is a proof of claim that Alger swore to on October 25, 1943, then forwarded to J. W. Jones, receiver for the Fidelity Assurance Association, at Frankfort, Kentucky, and the claimant in the document is indicated as "Alger Brown, Trustee for Elnora Brown."

A review of the testimony in this case brings out many conflicts. Evidence, for instance, was produced by appellants to show that Lorene was pregnant at the time she began working for Alger. One witness declared that Lorene had lived with a man named Sam Berry and it was he who fathered the child. This was denied by Sam Berry. Most of appellants' evidence was an attempt to prove that Lorene and her former husband, Davis Bush, continued to live together, subject to many interruptions, long after 1928, the date she said they separated, or that they had opportunities of access at all times, and that the child was born unto them in wedlock. Davis Bush, however, testified he had had no relations with his wife since their separation in 1928.

The Chancellor on October 30, 1948, adjudged that Elnora Brown, alias Ella Nora Bush, was the legitimate child and sole heir-at-law of Alger Brown and the inheritor of the latter's estate, subject to the widow's marital rights therein. Appellants appeal, urging a reversal of the judgment below (1) because the testimony of Lorene and Davis Bush, with reference to non-cohabitation when they were still married and there was access and opportunity for access, was inadmissible; (2) because the birth certificate introduced in proof is prima facie evidence of the identity of the child's father; and (3) because the evidence produced by appellees is insufficient to overcome the presumption that Davis Bush is the father of Elnora Brown.

Appellants insist strongly that the testimony of Lorene and Davis Bush, her former husband, was erroneously admitted by the Chancellor in violation of the rule of law in this jurisdiction that where access between a husband and wife, or opportunity of access, is fairly shown, the declarations of these two witnesses will not be permitted for the purpose of bastardizing a child that is presumed to have been born legitimate. To uphold this contention, appellants cite and rely upon Goss v. Froman, 89 Ky. 318, 12 S.W. 387, 8 L.R.A. 102; Vanover v. Steele, 173 Ky. 114, 190 S.W. 667; Wilson v. Wilson, 174 Ky. 771, 193 S.W. 7; and Veron's Adm'r v. Veron, 228 Ky. 56, 14 S.W.2d 185. Appellees, however, freely admit that the rule of law is well established in this state that testimony by parents as to non-access is inadmissible to bastardize an innocent child, but they argue that (a) one presumption is that the child is the legitimate daughter of Davis Bush who was married to the child's mother when the child was conceived and born; and (b) the alternative presumption is that the

child is the legitimate daughter of Alger because he later married the mother of the child and acknowledged the child to be his own. Therefore, whichever view is adopted, the child will not be bastardized, in either event, with the result that the evidence of Lorene and Davis Bush in the circuit court was competent.

We have no precedent in this jurisdiction to follow in accepting the above theory urged by appellees. However, in the case of In re Wright's Estate, 237 Mich. 375, 211 N.W. 746, 749, the identical point raised by appellees here was answered thus: "Whether the testimony of either parent, if believed, will result in bastardizing the issue ought to be the test. If it does not, the testimony should be admitted, if it does, it should be rejected."

■ Using the foregoing criterion as a guide, it is apparent that if Elnora is adjudged to be the child of Lorene and Davis Bush, she will not be declared a bastard, because she will have been born in lawful wedlock; or, if Alger is decreed to be the father of Elnora, she will still not be a bastard under the facts of this case, because of KRS 391.090(3) which provides that if a man who has a child by a woman afterward marries her the child shall be deemed legitimate if recognized by him before or after his marriage to the mother. The very basis of this legal principle is that it is against public policy to permit parents to give testimony that will bastardize their issue. With this reason for the rule in mind, we believe the Chancellor properly admitted the testimony of Lorene and Davis Bush, because the child will not be bastardized, regardless of the view one may adopt as to the child's paternity.

■ Turning now to the birth certificate, we first take note that KRS 213.190 provides, in part, that a certified copy of the birth certificate "shall be prima facie evidence in all courts and places of the facts therein stated." However, prima facie evidence is nothing more than a presumption which, if unrebutted or unexplained, is sufficient to maintain a proposition. Presumptions are indulged in to supply facts and do not arise where the facts are known.

A presumption, however, must give way when it comes in conflict with clear, distinct and convincing proof. Prudential Ins. Co. of America v. Tuggle's Adm'r, 254 Ky. 814, 72 S.W.2d 440. We shall now consider whether the facts presented by the evidence in this case are sufficient to overcome the presumption created by the birth certificate.

KRS 391.090(3) provides: "If a man who has had a child by a woman afterward marries her, the child or its descendents, if recognized by him before or after marriage, shall be deemed legitimate."

■ In 1887, in Sams v. Sams' Adm'r, 85 Ky. 396, 3 S.W. 593, this Court held that the statute just quoted did not apply where a married man had children by some woman other than his wife and later married her, thereby limiting the scope of the statute to those instances in which an unmarried woman had a child by an unmarried man and later married him. In 1917, Bates v. Meade, 174 Ky. 545, 192 S.W. 666, overruled the Sams case and held that where a single man had two children by a woman married to another man and thereafter married her the children were legitimated by his recognition of the children as his. Two years later, Stamper v. Lunsford, 185 Ky. 558, 215 S.W. 297, held that a child born to an unmarried woman was legitimated after his birth by the marriage of his father to his mother and the acknowledgment of the child as his own, even though the father was legally married to another woman at the time of the child's birth. In the instant case we entertain no doubt that, if the child of a married woman is fathered by a married man and is subsequently acknowledged by him as his child before or after his marriage to the mother, the child is legitimated.

■ Appellants insist that the evidence introduced by them overwhelmingly establishes the fact that Elnora is the legitimate child of Lorene and Davis Bush. While we frankly concede that the evidence is conflicting on this point, we cannot agree with their conclusion. We have the admissions of both Lorene and Davis Bush that Alger fathered the child. Their declarations are corroborated by other strong

evidence. It was made clear and very convincing that Alger acknowledged and recognized the child as his before and after his marriage to Lorene. When the evidence merely raises a doubt as to the correctness of the Chancellor's finding of fact, his finding will not be disturbed on appeal. Hatfield v. Hatfield, 246 Ky. 359, 55 S.W.2d 5; Green v. Davis, 253 Ky. 105, 68 S.W.2d 750; Elam v. Elam, 258 Ky. 350, 80 S.W.2d 11. Therefore, this Court will not disturb the findings of fact of the Chancellor.

Wherefore, the judgment is affirmed.