Gertrude TARTER, Appellant,

v.

Ruth MEDLEY, Appellee.

Court of Appeals of Kentucky.

Jan. 19, 1962.

Rehearing Denied May 4, 1962.

Fritz Krueger, Don Cooper, Somerset, for appellant.

Joseph Montgomery, Somerset, Charles. J. Schear, Newport, for appellee.

STANLEY, Commissioner.

The action was brought by the appellant,. Gertrude Tarter, to quiet her title to real property as the sole heir of her brother,. Kenneth Tarter, who died intestate January 19, 1944. She charged that the defendant,

Ruth Medley, was setting up a spurious claim to the property. The judgment appealed is for the defendant on her counterclaim.

■ The ultimate question is whether the appellee, who, it is admitted, was born when her mother was the wife of another man, is Tarter's child and entitled to inherit his estate. Under our statutes an illegitimate child (KRS 406.010) inherits only from his or her mother or mother's kindred, KRS 391.090(2), subject to this condition: "If a man who has had a child by a woman afterward marries her, the child or its descendants, if recognized by him before or after marriage, shall be deemed legitimate." KRS 391.090(3). The defendant, as counterclaimant, assumed the burden of proving three indispensable factors, namely, that (1) she is Tarter's child, (2) he and her mother were married after she was born, and (3) he recognized her as his child. The plaintiff offered no evidence in rebuttal.

At the beginning of the trial, upon the defendant's motion and without objection, a jury was impaneled to try the case; but at the end the plaintiff moved the court to withdraw the case from the jury and decide the issues. That motion and the respective motions of both parties for a directed verdict were overruled and the issues submitted to the jury. Its verdict was: "We the jury find Ruth Medley to be Kenneth Tarter's daughter." There was no mention of the other questions of marriage and recognition. The motions of both parties for a judgment notwithstanding the verdict were overruled. The judgment was that Mrs. Medley was Tarter's legitimate child and sole heir at law and dismissed the complaint.

The appellant insists that the case should not have been tried by a jury and that incompetent evidence was admitted and erroneous instructions given.

■ The adjudication of title to land, such as quieting title, is peculiarly one for a court of equity, and the issues are not triable by a jury. Aluminum Co. of America v. Frazer, Ky., 328 S.W.2d 142. We have other cases of this class where the questions of legitimacy through marriage and recognition were tried by chancellors. Todd v. Bowman, 285 Ky. 117, 147 S.W.2d 75; Dudley's Adm'r v. Fidelity & Deposit Co. of Maryland, Ky., 240 S.W.2d 76. The appellee insists that under CR 39.03 this case was triable by a jury, and its verdict must be given the same effect as if the trial had been as a matter of right. In any event, the court accepted the verdict, at least as advisory. Under the view we have of the proof we do not think the question of how the verdict is to be regarded is important. In considering the case we eliminate evidence regarded as incompetent. It is, principally, testimony of Mrs. Medley as to numerous occasions on which Kenneth Tarter had acknowledged and introduced her as his daughter. We also pass over the question of error in the instructions. Cf. Aluminum Co. of America v. Frazer, supra. We turn to appellant's contention that the competent evidence fell short of proving that she, Miss Tarter, is entitled to judgment on the merits.

We summarize the evidence as to the three prerequisites to establishing Ruth's right to inherit Tarter's estate. Without any disrespect we may use the given names of the parties for simplicity.

*Paternity and Recognition.* The appellee's mother's maiden name was Maggie Phillips. She was brought up by her uncle and aunt, Schyler and Relda Cundiff, who ran a store at Columbia Crossing in Pulaski County. Kenneth Tarter worked in the store. He courted Maggie when she was sixteen or seventeen years old and he about four years older. According to her testimony, she became pregnant by him. She had no sexual intercourse with any other man. Kenneth came to see her when she was sick in bed with the flu, and she told him of her condition. He had little to say except, "I'll see you," and left to hop a passing freight train. Later, Kenneth agreed to meet Maggie at her mother's home in Somerset and go with her to

Cincinnati. When it was traintime and he had not shown up, Maggie and her mother and stepfather, Hobert Purcell, went to Cincinnati. Dixie Roberts had a room in the apartment house into which they moved, and, according to Maggie and Purcell, Roberts married her in order to help her and to give her child a name. This was a month before Ruth was born there on August 20, 1920.

While Maggie was not asked whether she had had sexual relations with Roberts before marriage and did not categorically say she had not, it is undisputed that she had not seen him until the time stated. There is evidence of her chastity before her affair with Tarter.

When Ruth was about a month old, Maggie and Roberts moved to Pulaski County and stayed with her uncle and aunt at Columbia Crossing for a while and then moved into Somerset. Maggie testified that one day when she had the baby with her she met up with Kenneth on the street, and he said he wanted to see his daughter and then bought her some things. He came to see them on other occasions. Roberts seemed to object to Kenneth's coming around, and once shot at him. Hobert Purcell testified to Kenneth's having come to see the baby over his protest. Convincing testimony was given by several of Kenneth's old friends and intimates that on numerous occasions he told them he had a daughter and had introduced Ruth as his baby and, when she was growing up, as his daughter. These and other witnesses testified that Ruth is tall and slim like Kenneth and otherwise bears close resemblance to him. None of the foregoing positive evidence is denied.

■ The counterplaintiff, Ruth Medley, testified to numerous occasions when Kenneth Tarter had recognized and treated her as his child. The court first admitted several conversations between them but later sustained objections and withdrew the testimony with an admonition to the jury to disregard it. Generally, however, the court admitted testimony of occurrences and transactions between them other than conversations. He permitted her to introduce four letters addressed to her from Kenneth Tarter while he was a prisoner in the penitentiary in 1938. Two similar letters dated in 1940, bearing the postmark of West Somerset, Kentucky, were also introduced. These letters and the envelopes in which they were mailed pretty well show authenticity, as she claimed, but there was no proof that they were in Tarter's handwriting or that he wrote them, other than Ruth's testimony. Under the provisions of KRS 421.210(2), formerly § 606 of the Civil Code, Mrs. Medley was disqualified to testify to the occurrences and transactions with the deceased man. Cunningham's Adm'r v. Speagle, 106 Ky. 278, 50 S.W. 244; Barnett's Adm'r v. Brand, 165 Ky. 616, 177 S.W. 461; Combs v. Roark's Adm'r, 221 Ky. 679, 299 S.W. 576; Gibbs v. Terry, Ky., 281 S.W.2d 712. With respect to the letters, the witness was not disqualified from saying she received them through the mail, but she could not testify as to their contents. Ganter's Adm'r v. Smith, 254 Ky. 654, 72 S.W.2d 58. As stated above, in our determination of the case we will disregard the evidence erroneously admitted.

The plaintiff, as counter-defendant, offered no evidence in rebuttal of the foregoing. She rests her defense on assertion of its insufficiency as proof.

■ The appellant stresses the presumption that a child born in wedlock is the child of the married couple—in this case of her mother and Roberts. Such presumption exists although the child was conceived before marriage. Though the presumption of paternity and legitimacy is one of the strongest known to the law, it is not conclusive but is rebuttable and may be overcome by factual evidence. Stein's Adm'r v. Stein, Ky., 106 S.W. 860; Boyers v. Boyers, 283 Ky. 1, 140 S.W.2d 646; Gross v. Gross, Ky., 260 S.W.2d 655.

Two circumstances are pointed to as sustaining the presumption and as support-

ing the appellant's contention that the appellee was not Tarter's child.

■ The appellee's birth certificate, registered in Hamilton County, Ohio, showed her name as Hester Leona Roberts. In 1943 she had the record legally changed to Hester Ruth Roberts. Her petition in the proceeding stated that there had been a mistake in the original certification and that she had always been known as "Hester Ruth Cleveland, nee Roberts." She explained in her testimony that she did not have her surname changed to Tarter because she had been married under the name of Ruth to a man named Cleveland, and she thought "it would have seemed a little out of place" to have included the name of Tarter. A birth certificate creates the prima facie evidence, but the presumption may be rebutted or explained. Dudley's Adm'r v. Fidelity & Deposit Co., Ky., 240 S.W.2d 76.

The other circumstance to which we have alluded does not directly concern the issue but rather relates to the credibility of the appellee's mother, now Mrs. Maggie Cox. In October, 1923, she filed suit in the Pulaski Circuit Court for a divorce from Kenneth Tarter, alleging a marriage to him on September 15, 1922. The petition (which was not signed by her) states that she had married him under duress and that at the time she was the wife of Dixie Roberts, who was then confined in the penitentiary. The case was stricken from the docket without having been tried. She filed another such suit in that court in 1926 and judgment of divorce from Tarter was granted, and she was restored to her maiden name of Maggie Phillips. The petition for this divorce is not in the record. Maggie testified that in neither suit did she claim to have had a child by Tarter and asked no support for any child. She was not asked the reason, but several reasons suggest themselves. Appellant's point is that Maggie did not allege she had a child by Kenneth.

We have to consider the totality of the picture and cannot regard these isolated circumstances and their implications as affecting the basic soundness and strength of the definite and positive evidence of the paternity of Kenneth Tarter and his recognition of the appellee as his child.

■ *Marriage.* The appellee's mother, Maggie, testified that one day she met up with Tarter in Cincinnati where she was living. He was drunk, drew a pistol and forced her to go with him to Newport, Kentucky, where they were married. She gave no particulars and filed no record. But this was the marriage referred to in the divorce suits. It may be disregarded, for, in any event, it would have been bigamous and void, and required no judicial decree to nullify it. KRS 402.020(3). Fields v. Commonwealth, 301 Ky. 551, 192 S.W.2d 478. Maggie obtained a divorce from Roberts about two years after their marriage.

The appellee relies on the existence of a subsequent common law marriage of her mother and Tarter. After obtaining the judgment of divorce from Tarter in Pulaski County in 1926, as above related, Maggie returned to Cincinnati and lived with her mother and stepfather, the Purcells. Apparently, Tarter moved in with them. Purcell testified that in his hearing Maggie told Kenneth that her lawyer had said it would be all right to go back to Cincinnati, make up with him and live with him as his common law wife. He wanted to do that and to make a home for her and take care of the baby (Ruth), and she agreed to the arrangement. They set up housekeeping and for four or five months lived together as husband and wife, holding themselves out to the public as married. Maggie testified to the same things. Kenneth went away from home and didn't come back for two weeks. He was "on a drunk." She returned to her mother's apartment. Later she moved to Somerset and did not see Kenneth until a short time before his father died. There is no countervailing evidence.

■ At common law a mutual agreement between a man and woman, capable of contracting, to become presently husband and wife, when accompanied by cohabitation as such, constitutes a valid marriage, no formal ceremony being required. Nolan v. Giacomini, 250 Ky. 25, 61 S.W.2d 1055. In this case, while the appellant questions the probative force of the evidence of a common law marriage between Maggie and Kenneth, it seems to us the essential elements were satisfactorily proved. In Gatterdam v. Gatterdam, 86 Ohio App. 29, 85 N.E.2d 526, appeal dis. 151 Ohio St. 551, 86 N.E.2d 614, the marital status was established though the parties had held themselves out as husband and wife for only two weeks after the agreement. We have recognized that such marriage in Ohio is valid, although one or both parties moved to Kentucky after the relationship was created. Tryling v. Tryling, 245 Ky. 399, 53 S.W.2d 725; Hoffman v. Hoffman, 285 Ky. 55, 146 S.W.2d 347. That recognition was given in Kennedy v. Damron, Ky., 268 S.W.2d 22, but we held a common law marriage was not established because the parties were but transients in Ohio.

■ The conclusion of the whole case is that the trial court should have ruled as a matter of law that the appellee is the child of the deceased, Kenneth Tarter, and was legitimatized by virtue of the statute, KRS 391.090(3), and is his sole heir. This conclusion, as indicated earlier in the opinion, renders any trial error immaterial.

The judgment is affirmed.