793 F.2d 1292
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
JAMES F. LANHAM, Plaintiff-Appellant,
v.
SECRETARY, DEPT. OF HEALTH & HUMAN SERVICES; ROSETTA SMITH
and ROBIN KING, Defendants-Appellees.
 85-5581
 United States Court of Appeals, Sixth Circuit.
 5/16/86
 
 AFFIRMED
 W.D.Ky.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY
 Before: KRUPANSKY and WELLFORD, Circuit Judges; and PECK, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Plaintiff-appellant James F. Lanham appeals the judgment of the United States District Court for the Western District of Kentucky, Judge Thomas A. Ballantine, Jr., adverse to plaintiff, which affirmed a final administrative decision of the Secretary of Health and Human Services. The Secretary below determined that Noah L. Lanham was not a 'child' of the deceased wage earner, Noah L. King, within the meaning of sections 202(d) and 216(h) of the Social Security Act, as amended, 42 U.S.C. Secs. 402(d) and 416(h), and was therefore not entitled to benefits. For the reasons that follow, we affirm the district court.
 
 I.
 A.
 
 2
 On March 26, 1982, James F. Lanham filed an application for surviving child's insurance benefits on behalf of his adopted son, Noah Lee Lanham. He based his application on the Social Security earnings record of the deceased wage earner, Noah Lee King.
 
 
 3
 On April 12, 1982, Rosetta S. Smith (widow of the deceased wage earner) was notified that the benefits being paid to Meleeisa J. and Robin L. King (the deceased wage earner's legitimate children) might be reduced because of the claim filed by Noah Lanham. In a special determination dated October 8, 1982, the Social Security Administration found that the deceased wage earner was the father of Noah L. (King, Jr.) Lanham. In a statement dated November 29, 1982, Rosetta S. Smith protested the special determination. On reconsideration, January 28, 1983, the Secretary found that Noah L. Lanham was eligible to receive a proportionate share of the benefits payable as a surviving child of the insured wage earner. As a result, the benefits to Meleeisa and Robin King were reduced proportionately.
 
 
 4
 On March 1, 1983, Rosetta Smith requested a hearing. The plaintiff was made a party to the hearing. The administrative law judge (ALJ) heard the testimony of Rosetta Smith, Donna Sue Rice, who is the natural mother, plaintiff, and three other witnesses. On July 23, 1983, he issued a final decision, finding that Noah L. Lanham was not a 'child' of Noah L. King, that Noah Lanham was not entitled to surviving child's benefits, and that Meleeisa and Robin King should not have their benefits reduced. On December 5, 1983, the Appeals Council denied appellant's request for review of the ALJ's decision.
 
 B.
 
 5
 Donna Sue Rice was nineteen years old when Noah was born on November 18, 1971. Noah has lived most of his life with the plaintiff and with his mother. On December 6, 1981, the Department of Human Resources for the Commonwealth of Kentucky approved the plaintiff's request to adopt Noah. On February 16, 1982, the Daviess Circuit Court for the Commonwealth of Kentucky ordered that Noah be the adopted child of the plaintiff, that Noah's legal name be changed from Noah Lee King, Jr., to Noah Lee Lanham, and that 'Noah Lee Lanham' be considered for purposes of inheritance, succession, support, and all other legal purposes as the natural legitimate child of James Felix Lanham.
 
 
 6
 The original birth certificate of the child listed Noah Lee King (the deceased wage earner) as the natural father. However, the natural mother later signed a sworn statement that what she 'put on the birth record was false.' She said that she listed Noah Lee King's name 'out of spite to hurt someone else.' Under oath she testified that Noah Lee King was not the father and that she never had sex with Mr. King.
 
 
 7
 When Noah Lanham was born, Noah Lee King was twenty-nine years old, married, and had two legitimate children. His wife's statement to the ALJ maintained that she had no reason to believe that her husband was sexually involved with another woman. She also said that they had no significant marital difficulties.
 
 
 8
 Jerry Burch, a long-standing friend of King, said that the natural mother and King argued about the issue of paternity. Burch said that the natural mother threatened King that if he refused to pay child support, she would tell his wife. Allegedly, King then said that he could be one of over twenty people that might have been the father. Later, the two got into another fight about the issue of paternity, and the natural mother had King arrested for assault. Burch's testimony was later corroborated by the natural mother. She confirmed that they argued over the issue of paternity, and she confirmed that King assaulted her.
 
 
 9
 Leroy Crabtree submitted a statement dated May 4, 1982. He said that he 'went with' Donna Rice (the natural mother) from January 1970 to October 1982. He said that 'on different times, Lee [Noah Lee King] told me he did not think the kid she was pregnant with was his.' He concluded: 'Donna even told me it wasn't Lee's.'
 
 II.
 
 10
 Plaintiff argues his due process rights were denied at the ALJ hearing. The plaintiff's argument is that the natural mother should have been cross-examined on her refusal to reveal the identity of the natural father. He argues this was necessary because the credibility of the natural mother was crucial to the ALJ's finding against plaintiff.
 
 
 11
 We find, however, that the record does not reveal plaintiff was denied the opportunity to cross-examine the natural mother on this issue. The record does show that the natural mother declined to reveal to the ALJ who the natural father was, and the ALJ acquiesced. But plaintiff cross-examined the natural mother. Plaintiff does not cite to any portion of the record where he asked the natural mother who the natural father was or where he objected to the ALJ's earlier acquiesence to the natural mother's refusal to reveal the identity of the father. In our thorough review of the record we detect no evidence of a due process violation.
 
 III.
 
 12
 Substantial evidence[1] supports the ALJ's finding that plaintiff failed to prove Noah L. King's paternity of the child by clear and convincing evidence. Under 42 U.S.C. Sec. 416(h)(2)(A) (1982), the Secretary determines 'whether an applicant is the child . . . of a fully or currently insured individual . . . [by] apply[ing] such law as would be applied in determining the devolution of intestate personal property . . ..' The Kentucky Supreme Court requires proof of paternity of an illegitimate child by clear and convincing evidence. Fykes v. Clark, 635 S.W.2d 316 (Ky. 1982).[2]
 
 
 13
 The evidence supporting a finding of paternity includes the child's birth certificate naming King as father.[3] A witness testified that King treated the child as his own and that he was proud of the child. Another witness stated the natural mother told him King was the father and that King celebrated the night the child was born. King's half-brother stated King told him the child was King's.
 
 
 14
 The evidence supporting the Secretary's finding of no paternity was primarily the natural mother's testimony that she had never had sex with King. She stated that the reason she put his name on the birth certificate was to make her boyfriend jealous. She said she knew who the father was, but declined to identify him. King's former wife stated she and King did not have marital difficulties. Another witness testified King and the natural mother told him that King was not the father.
 
 
 15
 In reviewing the ALJ's findings, the district judge concluded the plaintiff had not proved paternity by clear and convincing evidence. The court contrasted the proof in the present case with the proof adduced in Fykes.
 
 
 16
 We hold that substantial evidence supports the Secretary's conclusion that plaintiff failed to prove King's paternity of the child by clear and convincing evidence under Kentucky law. The ALJ based his determination primarily on the testimony of the natural mother. The proper weight to accord her testimony is a credibility determination. Although we find evidence in the record that undercuts the credibility of the natural mother, the evidence suggesting the mother might give unreliable testimony is insufficient to reverse the ALJ. Determinations of credibility are normally the province of fact finders like the ALJ. The ALJ was in a much better position than this court to observe the demeanor of the witnesses. Our deference to the credibility findings of the ALJ, therefore, leads us to conclude substantial evidence supports his denial of benefits.
 
 
 17
 Accordingly, we AFFIRM the district court.
 
 
 
 [1]
 This court's scope of review is limited to a determination of whether the Secretary's findings are supported by substantial evidence. Futernick v. Richardson, 484 F.2d 647 (6th Cir. 1973). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971)
 
 
 [2]
 The district court noted that Fykes concerned a posthumous illegitimate child, but determined that the standard would be the same under the facts of the present case. Plaintiff does not address this issue
 
 
 [3]
 Ky. Rev. Stat. 213.190 provides that a certified copy of a birth certificate shall be prima facie evidence of the facts stated therein. The evidence, however, is rebuttable. Dudley's Adm'r v. Fidelty & Deposit Co., 240 S.W.2d 76 (Ky. 1951)